**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009

      Plaintiff,

      v.

INTERNAL REVENUE SERVICE
1111 Constitution Avenue, N.W.
Washington, D.C. 20224

      Defendant.

Civ. Action No. ____18-902____

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief to secure the release of agency records requested by Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant Internal Revenue Service ("IRS").

2.     EPIC challenges the failure of the IRS to disclose non-exempt records in response to EPIC's FOIA Request for (a) all accepted offers-in-compromise relating to any past or present tax liability of President Donald J. Trump and the business entities President Trump is associated with; and (b) all tax return information "necessary to permit the inspection of [such] accepted offer[s]-in-compromise." 26 U.S.C. § 6103(k)(1).

3.     Disclosure of the requested records, which are of overwhelming public interest, is mandated by the FOIA, § 6103(k)(1) of the Internal Revenue Code, and Exec. Order No. 10,386, 17 Fed. Reg. 7,685 (Aug. 20, 1952).

**Jurisdiction and Venue**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 5

U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552(a)(6)(C)(i). This Court has personal jurisdiction over

Defendant IRS.

5.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

**Parties**

6.      Plaintiff EPIC is a nonprofit organization incorporated in Washington, D.C. and

established in 1994 to focus public attention on emerging privacy and civil liberties issues.

Central to EPIC's mission is oversight and analysis of government activities.

7.      EPIC is a membership organization. EPIC's members include distinguished experts in

law, technology, and public policy.

8.      EPIC maintains one of the most popular privacy websites in the world, epic.org, which

provides EPIC's members, policymakers, and the public with access to current information about

emerging privacy and civil liberties issues. EPIC also disseminates information to the public

through the EPIC Alert[1] and through various news organizations. EPIC is a representative of the

news media. *EPIC v. DOD*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

9.      As an organization dedicated to the protection of both personal privacy and government

transparency, EPIC is uniquely situated to assess the competing interests of privacy protection

and public access to taxpayer records. EPIC has determined that—in these extraordinary

circumstances—it is appropriate to seek the public release of President Donald J. Trump's offers-

in-compromise and related tax information.

---

[1] *See* EPIC, *EPIC Alert* (April 13, 2018), https://epic.org/alert/.

10.     EPIC, acting through a separate FOIA request and lawsuit, has also sought the personal

tax returns of President Trump pursuant the FOIA and 26 U.S.C. § 6103(k)(3). That case is

currently pending before the U.S. Court of Appeals for the D.C. Circuit. *EPIC v. IRS*, No. 17-

5225 (D.C. Cir. docketed Oct. 4, 2017).[2]

11.     Defendant IRS is a federal agency within the meaning of the FOIA. 5 U.S.C. § 552(f)(1).

Defendant IRS is headquartered in Washington, D.C.

## Facts

### The Unique Public Interest in the Disclosure of President Trump's Tax Records

12.     If the Freedom of Information Act means anything, it means that the American public has

the right to know whether records exist in the possession of a federal agency which reveal that

the President of the United States has financial dealings with a foreign adversary.[3]

13.     President Donald J. Trump has consistently refused to disclose any personal tax records

or the tax records of his businesses, leaving the American public "in the dark" as to his financial

entanglements with Russia. [4]

14.     President Trump's failure to release his tax records is unprecedented and goes directly

against the long-standing tradition of candidates for the U.S. presidency.[5] Trump was the first

major party presidential candidate in 40 years not to make his returns available for public

---

[2] *See also* EPIC, *EPIC v. IRS (Donald Trump's Tax Records)* (Apr. 16, 2018),
https://epic.org/foia/irs/trump-taxes/.
[3] *Cf. Stanley v. Georgia*, 394 U.S. 557, 565 (1969) ("If the First Amendment means anything, it
means that a State has no business telling a man, sitting alone in his own house, what books he
may read or what films he may watch.").
[4] *EPIC v. IRS*, 261 F. Supp. 3d 1, 1 (D.D.C. 2017).
[5] Julie Hirschfeld Davis, *Trump Won't Release His Tax Returns, a Top Aide Says*, N.Y. Times
(Jan. 22, 2017), https://www.nytimes.com/2017/01/22/us/politics/donald-trump-tax-returns.html.

review.[6] Though he initially promised to release his tax information, President Trump withdrew

this commitment after his election.[7]

15.     The contents of the President's tax records are of exceptional interest to Americans, who

favor their disclosure by a wide margin.[8] More than 1 million people signed a petition urging the

federal government to "[i]mmediately release Donald Trump's full tax returns, with all

information needed to verify emoluments clause compliance."[9] According to a recent CNN poll,

73% of Americans believe the President should release his returns.[10] Still, President Trump has

refused to make these records available.

16.     Members of Congress have made numerous concerted efforts to compel President Trump

to release his tax records, including proposed legislation that would require all presidents—

current and future—to submit their returns for public disclosure.[11] Meanwhile, more than half of

---

[6] *Id.*

[7] *Id.*; *see also* Editorial, *Trump breaks his tax returns promise — for the third year in a row*, Wash. Post (Apr. 16, 2018), https://www.washingtonpost.com/opinions/trump-breaks-his-tax-returns-promise--for-the-third-year-in-a-row/2018/04/16/581552a8-3f3c-11e8-a7d1-e4efec6389f0_story.html ("As many Americans scramble to file their tax returns by Tuesday's deadline, one is brazenly defying expectations regarding his tax information, making 2018 the third year in a row he will have gotten away with it. When he was a candidate, Donald Trump repeatedly promised to let the public see his tax forms. He has yet to do so.").

[8] Gary Langer, *Public Splits on Trump's Ethics Compliance; Three-Quarters Want Tax Returns Released (POLL)*, ABC News (Jan. 16, 2017), http://abcnews.go.com/Politics/public-splits-trumps-ethics-compliance-quarters-tax-returns/story?id=44811545.

[9] A.D., *Immediately release Donald Trump's full tax returns, with all information needed to verify emoluments clause compliance.*, We the People (Jan. 20, 2017), https://petitions.whitehouse.gov/petition/immediately-release-donald-trumps-full-tax-returns-all-information-needed-verify-emoluments-clause-compliance.

[10] *CNN Poll: 73% Think Trump Should Release Tax Returns*, CNN (Dec. 20, 2017), *available at* https://youtu.be/02694Tusp3g?t=18m38s (finding that 73% Americans think President Trump should "release his tax returns for public review"); *accord* CNN, *CNN December 2017* at 7 (Dec. 19, 2017), *available at* http://cdn.cnn.com/cnn/2017/images/12/18/rel12a.-.trump.and.taxes.pdf.

[11] Presidential Tax Disclosure Act of 2017, H.R. 540, 115th Cong. (2017); *see also* H.R. Res. 186, 115th Cong. (2017) ("Of inquiry directing the Secretary of the Treasury to provide to the House of Representatives the tax returns and other specified financial information of President Donald J. Trump."); Presidential Tax Transparency Act, S. 2979, 114th Cong. (2016); Colin

the nation's state legislatures have introduced bills which would force presidential candidates to

release their recent tax returns in order to appear on the ballot.[12] The California and New Jersey

legislatures both passed a presidential tax return disclosure bill, and the Maryland Senate

recently approved a similar bill in March.[13]

17.     The importance of public access to President Trump's tax records has only grown over

the past year. Since at least May 2017, President Trump, the President's campaign, and many of

the President's closest associates have been under federal investigation for allegedly

coordinating with the Russian government to interfere in the 2016 U.S. presidential election.[14]

That investigation has produced indictments of two close Trump associates for money laundering

and other offenses, while two more associates—including former National Security Advisor

Michael Flynn—have pled guilty to making false statements.[15]

18.     President Trump has issued provably false denials about his financial entanglements with

Russia. In July 2016, then-candidate Trump stated: "For the record, I have ZERO investments in

---

Wilhelm, *House panel to take up Trump tax return resolution*, Politico (Sep. 5, 2017),
https://www.politico.com/story/2017/09/05/trump-tax-returns-242358; Naomi Jagoda, *House Dems launch new effort to force vote on Trump tax returns*, The Hill (Apr. 5, 2017),
http://thehill.com/policy/finance/327394-house-dems-launch-new-effort-to-force-vote-on-trump-tax-returns.
[12] James Pindell, *A growing movement would force presidential candidates to release tax returns*, Boston Globe (Mar. 23, 2017), https://www.bostonglobe.com/news/politics/2017/03/23/growing-movement-would-force-presidential-candidates-release-tax-returns/sISB9vW3JrYylyS N8nRJUN/story.html.
[13] Laurel Wamsley, *Md. Senate Passes Bill Requiring Presidential Candidates To Release Tax Returns*, NPR (Mar. 6, 2018), https://www.npr.org/sections/thetwo-way/2018/03/06/591165165/md-senate-passes-bill-requiring-presidential-candidates-to-release-tax-returns.
[14] *See, e.g.*, Rod J. Rosenstein, *Order No. 3915-2017: Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017), *available at* https://www.justice.gov/opa/press-release/file/967231/download.
[15] *Special Counsel's Office*, The United States Department of Justice (Dec. 1, 2017), https://www.justice.gov/sco.

Russia."[16] And in January 2017, President-Elect Trump stated: "Russia has never tried to use leverage over me. I HAVE NOTHING TO DO WITH RUSSIA—NO DEALS, NO LOANS, NO NOTHING![17] Yet even the President's own lawyers have acknowledged numerous financial relationships between the President and Russian organizations.[18]

19.     In addition to clarifying President Trump's Russian business ties, disclosure of Trump's tax records could help determine whether and how the President has benefitted from the tax bill he championed and signed into law last year.[19] Disclosure could also establish whether the IRS unfairly targets the President for audits on religious and political grounds—a claim which Trump made in 2016[20] but which former IRS Commissioner John Koskinen expressly denied the following day.[21]

---

[16] *EPIC*, 261 F. Supp. 3d at 4 (quoting @realDonaldTrump, Twitter (July 26, 2016, 3:50 PM)).
[17] *Id.* (quoting @realDonaldTrump, Twitter (Jan. 11, 2017, 4:31 AM)).
[18] Letter from Sheri A. Dillon & William F. Nelson, Tax Partners, Morgan Lewis & Bockius LLP, to President Donald J. Trump (Mar. 8, 2017) (letter from President Trump's attorneys detailing the President's numerous Russian sources of income).
[19] *Compare* James B. Stewart, *Trump Says G.O.P. Tax Bill Wouldn't Benefit Him. That's Not True*, N.Y. Times (Nov. 30, 2017), https://www.nytimes.com/2017/11/30/business/trump-benefit-tax-cuts.html ("'This is going to cost me a fortune,' he said on Wednesday in Missouri. 'This is not good for me.'"), *and* Christina Wilkie, *Trump: 'I Don't Benefit' from GOP Tax Reform Plan*, CNBC (Sep. 27, 2017), https://www.cnbc.com/2017/09/27/trump-i-dont-benefit-from-gop-tax-reform-plan.html ("'I don't benefit, no,' Trump replied to a reporter who asked him whether he would get a tax cut under the current framework."), *with* Drew Harwell, *Trump stands to save millions under new tax measure, experts say*, Wash. Post (Dec. 20, 2017), https://www.washingtonpost.com/politics/trump-stands-to-save-millions-under-new-tax-measure-experts-say/2017/12/20/6d29a4c4-e59a-11e7-833f-155031558ff4_story.html ("President Trump . . . will likely save millions of dollars, thanks to Congress's approval of a tax plan he pledged was designed for the middle class.").
[20] Jenna Johnson, *Donald Trump says IRS audits could be tied to being a 'strong Christian'*, Wash. Post (Feb. 26, 2016), https://www.washingtonpost.com/news/post-politics/wp/2016/02/26/donald-trump-says-irs-audits-could-be-tied-to-being-a-strong-christian/ ("I'm always audited by the IRS, which I think is very unfair—I don't know, maybe because of religion, maybe because of something else, maybe because I'm doing this, although this is just recently[.]").
[21] *Newsmakers with John Koskinen*, C-SPAN (Feb. 26, 2016), https://www.c-span.org/video/?405379-1/newsmakers-john-koskinen.

20.   The public urgently requires as much information about President Trump's finances as the IRS can lawfully release.

EPIC's FOIA Request

21.   On February 5, 2018, EPIC submitted a FOIA Request to the IRS seeking four categories of records. Ex. 1.[22] With respect to President Trump personally, EPIC requested:

> (1) All accepted offers-in-compromise relating to any past or present tax liability of Donald John Trump, the current President of the United States.
>
> (2) All other "return information . . . necessary to permit inspection of [the] accepted offer[s]-in-compromise" described in Category 1 of this request. Records responsive to Category 2 include, but are not limited to, "income, excess profits, declared value excess profits, capital stock, and estate or gift tax returns for any taxable year," as applicable.

*Id.* at 1 (internal citations omitted).

22.   EPIC also attached to its FOIA Request a fifteen-page list, labeled Appendix A, of business entities with which President Trump is associated. *Id.* at 9–23. With respect to the business entities identified in Appendix A, EPIC requested:

> (3) All accepted offers-in-compromise relating to any past or present tax liability of any entity identified in Appendix A of this request.
>
> (4) All other "return information . . . necessary to permit inspection of [the] accepted offer[s]-in-compromise" described in Category 3 of this request. Records responsive to Category 4 include, but are not limited to, "income, excess profits, declared value excess profits, capital stock, and estate or gift tax returns for any taxable year," as applicable.

*Id.* at 2 (internal citations omitted).

23.   EPIC emphasized that it sought "**all** of the above records for **all** years regardless of where and in what form the IRS maintains them." *Id.* EPIC also explained that the records described may "take the form of a Public Inspection File, an AOIC Masterfile Screen transcript, a TDS

---

[22] FOIA Request from John Davisson, EPIC Counsel, to IRS Disclosure Office (Feb. 5, 2018).

7

transcript, a Form 656, a Form 433, a Form 7249, or any other agency document." *Id.* at 1
(internal citations omitted).

24.    EPIC sought "news media" fee status under 5 U.S.C. § 552(4)(A)(ii)(II) and a waiver of
all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii). Ex. 1 at 6–8.

<u>EPIC's Legal Right to the Requested Records</u>

25.    EPIC has a legal right to release of the records identified in its FOIA Request because
their disclosure is mandated by the FOIA, § 6103(k)(1) of the Internal Revenue Code, and Exec.
Order No. 10,386, 17 Fed. Reg. 7,685 (Aug. 20, 1952) ("Inspection of Files Covering
Compromise Settlements of Tax Liability").

26.    Although most tax returns and return information "shall be confidential,"[23] 26 U.S.C. §
6103(k)(1) requires the disclosure of accepted offers-in-compromise and certain related return
information:

> **(1) Disclosure of accepted offers-in-compromise**
> Return information shall be disclosed to members of the general public to the extent
> necessary to permit inspection of any accepted offer-in-compromise under section
> 7122 relating to the liability for a tax imposed by this title.[24]

27.    Section 6103(k)(1) was one of several provisions in the Tax Reform Act of 1976
reflecting Congress's judgment that certain "returns or return information should be public as a
matter of policy, or that the reasons for the limited disclosures involved outweighed any possible
invasion of the taxpayer's privacy which might result from the disclosure."[25]

28.    As one tax official wrote of § 6103(k)(1): "Presumably, the public policy behind the
federal exemption from confidentiality of return information is a Congressional belief that the

---

[23] 26 U.S.C. § 6103(a).
[24] 26 U.S.C. § 6103(k)(1).
[25] S. Rep. No. 94-938, at 340 (1976).

compromise of tax liabilities is affected with significant public interest, to the extent that all

taxpayers are affected by such a compromise."[26]

29.     According to the Treasury Inspector General for Tax Administration: "The reason OICs

[offers-in-compromise] are available for public inspection goes back several decades. In the

early 1950s, an IRS employee was indicted for taking bribes from taxpayers seeking to

compromise their outstanding tax liabilities. A congressional investigation revealed that the IRS

had accepted offers with generous terms from racketeers and politically connected individuals. In

response to these scandals, on August 20, 1952, President Truman issued Executive Order 10386

directing the IRS to open for public inspection any accepted OIC. The Internal Revenue Code

permits public inspection and copying of accepted OIC case files."[27]

30.     Executive Order 10,386 remains in force today, as the IRS Manual makes clear.[28] Order

10,386 expands on the IRS's obligation to disclose offers-in-compromise, specifying that

"income, excess profits, declared value excess profits, capital stock, estate or gift tax returns for

any taxable year shall be open to inspection to the extent necessary to permit the inspection of

any accepted offer in compromise . . . ."[29]

31.     The IRS Manual specifically states that offers-in-compromise may be requested and

disclosed under the FOIA. Requests for offers-in-compromise "where no personal inspection is

---

[26] Larry Mednick, OIP Opinion Letter No. 89-3, 1989 WL 406076, at *6 (Nov. 3, 1989).
[27] Treasury Inspector Gen. for Tax Admin., *Letter Report: Procedures to Protect Taxpayer Information at Offer in Compromise Public Inspection File Locations Should Be Enhanced* at 2 (Mar. 28, 2016) (internal citations omitted), *available at* https://www.treasury.gov/tigta/ iereports/2016reports/2016ier006fr.pdf.
[28] I.R.M. 5.8.8.9(2)(a)–(b).
[29] Exec. Order No. 10,386, 17 Fed. Reg. at 7,685.

involved, should be in writing and processed in accordance with IRM 11.3.13, *Disclosure of Official Information - Freedom of Information Act.*"[30]

<u>The IRS's Failure to Release the Requested Records</u>

32.     By letter dated February 8, 2018, IRS Disclosure Manager David Nimmo acknowledged receipt of EPIC's February 5, 2018 FOIA Request. Ex. 2.[31]

33.     Nimmo stated that the IRS was "granting [EPIC]'s request to waive fees" and "granting [EPIC]'s request for expedited processing." *Id.* "We will search for documents responsive to the request," Nimmo wrote. *Id.* "The request has priority and we will make every effort to respond as quickly as possible." *Id.*

34.     On March 6, 2018—20 working days after EPIC filed its FOIA Request—EPIC Counsel John Davisson sent an email to Tax Law Specialist Michael Young asking Young to "advise on when the IRS will complete processing of EPIC's request[.]" Ex. 3.[32]

35.     Later that day, Young responded to Davisson by email. Ex. 4.[33] Young stated that "The IRS is requesting an extension of the due date (through March 30, 2018) to provide a response to your request." *Id.* at 1. EPIC did not consent to such an extension.

36.     Young also communicated the IRS's request for an extension by letter dated March 6, 2018. Ex. 5.[34] "We have extended the response date to March 30, 2018 when we believe we can provide a final response," Young wrote. *Id.* at 1. EPIC did not consent to such an extension.

---

[30] IRM 11.3.11.8 ¶ 4; *accord id.* ¶ 5.
[31] Letter from David Nimmo, IRS Disclosure Manager, to John Davisson, EPIC Counsel (Feb. 8, 2018).
[32] E-mail from John Davisson, EPIC Counsel, to Michael Young, IRS Tax Law Specialist (Mar. 6, 2018).
[33] E-mail from Michael Young, IRS Tax Law Specialist, to John Davisson, EPIC Counsel (Mar. 6, 2018).
[34] Letter from Michael Young, IRS Tax Law Specialist, to John Davisson, EPIC Counsel (Mar. 6, 2018).

37.     On April 2, 2018—39 working days after EPIC filed its FOIA Request—Davisson sent an email to Young to inquire about the status of EPIC's FOIA Request. Ex. 6.[35]

38.     Later that day, EPIC received a letter from Young dated March 28, 2018. Ex. 7.[36] Young requested on behalf of the IRS "additional time to April 27, 2018." *Id.* at 1. EPIC did not consent to such an extension.

39.     Today—April 17, 2018—is the 50th working day since the IRS received EPIC's FOIA Request.

40.     The IRS has failed to make a determination regarding EPIC's FOIA Request within the time period required by 5 U.S.C. § 552(a)(6)(B).

41.      The IRS's failure to make a determination within the statutory time limit violates the FOIA.

42.     EPIC has constructively exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## Count I

### Violation of the FOIA: Failure to Comply with Statutory Deadlines

43.     Plaintiff asserts and incorporates by reference paragraphs 1–42.

44.     Defendant IRS, by failing to make a determination regarding EPIC's request for 50 working days, has violated the deadline set forth in 5 U.S.C. § 552(a)(6)(B).

45.     Plaintiff has constructively exhausted all applicable administrative remedies with respect to EPIC's FOIA Request under 5 U.S.C. § 552(a)(6)(C)(i).

---

[35] E-mail from John Davisson, EPIC Counsel, to Michael Young, IRS Tax Law Specialist (Apr. 2, 2018).
[36] Letter from Michael Young, IRS Tax Law Specialist, to John Davisson, EPIC Counsel (Mar. 28, 2018).

46.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Count II

### Violation of the FOIA: Unlawful Withholding of Agency Records

47.     Plaintiff asserts and incorporates by reference paragraphs 1–42.

48.     Defendant IRS has wrongfully withheld agency records requested by EPIC.

49.     Plaintiff has constructively exhausted applicable administrative remedies with respect to EPIC's FOIA Request and Defendant's withholding of the requested records. 5 U.S.C. § 552(a)(6)(C)(i).

50.     Plaintiff has constructively exhausted all applicable administrative remedies with respect to EPIC's FOIA Request under 5 U.S.C. § 552(a)(6)(C)(i).

51.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Requested Relief

WHEREFORE, Plaintiff requests that this Court:

A.  Order Defendant to immediately conduct a reasonable search for all responsive records;

B.  Order Defendant to disclose to Plaintiff all responsive, non-exempt records;

C.  Award EPIC costs and reasonable attorney's fees incurred in this action; and

D.  Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ Marc Rotenberg
MARC ROTENBERG, D.C. Bar #422825
EPIC President and Executive Director

ALAN BUTLER, D.C. Bar #1012128
EPIC Senior Counsel

JOHN DAVISSON, D.C. Bar #1531914[37]
EPIC Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

*Attorneys for Plaintiff EPIC*

Dated: April 17, 2018

---

[37] Application to the bar of this Court pending since April 11, 2018.