UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>   *Plaintiff*,<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>   *Defendant*. | Civil Action No. 18-902 (TJK) |

## MEMORANDUM OPINION

The Electronic Privacy Information Center, known as EPIC, submitted a request under the Freedom of Information Act, or FOIA, seeking certain tax records related to any accepted offers-in-compromise involving former President Donald J. Trump and his associated business entities. After the Internal Revenue Service failed to process the request, EPIC sued. Before the Court is the Internal Revenue Service's motion to dismiss for failure to state a claim because, it contends, the law prohibits it from disclosing the records to EPIC. For the reasons explained below, the Court will grant the motion in part, because EPIC is not entitled to disclosure of the former President's tax returns or other return information not necessary to inspect any accepted offers-in-compromise, and otherwise deny it.

**I. Background**

Plaintiff Electronic Privacy Information Center ("EPIC"), a nonprofit organization, seeks injunctive relief requiring Defendant Internal Revenue Service ("IRS") to release records it requested through the Freedom of Information Act ("FOIA"). ECF No. 1 ("Compl.") ¶¶ 1–2, 25. In February 2018, EPIC submitted a FOIA request to the IRS. Compl. ¶ 21. It requested two categories of the former President's personal tax records and two categories of tax records from

business entities associated with him.  ECF No. 1-5 ("Compl. Exh. 1") at 2–3.  As for the former President's personal records, EPIC requested:

> (1) All accepted offers-in-compromise relating to any past or present tax liability of Donald John Trump, the current President of the United States.
>
> (2) All other "return information . . . necessary to permit inspection of [the] accepted offer[s]-in-compromise" described in Category 1 of this request.  Records responsive to Category 2 include, but are not limited to, "income, excess profits, declared value excess profits, capital stock, and estate or gift tax returns for any taxable year," as applicable.

*Id.* (internal citations omitted).  Similarly, with respect to the records of business entities associated with the former President, EPIC requested:

> (3) All accepted offers-in-compromise relating to any past or present tax liability of any entity identified in Appendix A [a fifteen-page list of the business entities associated with President Trump] of this request.
>
> (4) All other "return information . . . necessary to permit inspection of [the] accepted offer[s]-in-compromise" described in Category 3 of this request.  Records responsive to Category 4 include, but are not limited to, "income, excess profits, declared value excess profits, capital stock, and estate or gift tax returns for any taxable year," as applicable.

*Id.* at 3 (internal citations omitted).  An offer-in-compromise is "an agreement between the taxpayer and the IRS to settle a federal tax debt for less than the full amount owed."  IRM § 5.8.8.1.1.  In its request, EPIC stated that it "[sought] **all** of the above records for **all** years regardless of where and in what form the IRS maintains them."  Compl. Exh. 1 at 3.  EPIC also suggested several forms the records at issue might take, including a "Public Inspection File, . . . a Form 7249, or any other agency document." [1]  *Id.* at 2.

---

[1] "Public Inspection Files contain limited information regarding accepted Offers in Compromise such as the taxpayer name, city/state/zip, liability amount, and offer terms."  *See Offer in Compromise Public Inspection File*, IRS, https://www.irs.gov/businesses/small-businesses-self-employed/offer-in-compromise-public-inspection-file (last visited December 3, 2021).

After the IRS failed to respond to its request, EPIC sued in April 2018, alleging that the IRS violated FOIA by violating statutory deadlines and by unlawfully withholding agency records. Compl. ¶¶ 43–51.  The IRS moved to dismiss, then withdrew its motion after the D.C. Circuit decided *EPIC v. IRS* ("*EPIC I*")*,* 910 F.3d 1232 (D.C. Cir. 2018).  Now before the Court is the IRS's latest motion to dismiss, in which it argues that EPIC has failed to state a claim because the nondisclosure statute that covers tax information prohibits it from providing the records at issue.

## II.     Legal Standard

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted).  "[D]etailed factual allegations" are unnecessary to survive a motion to dismiss, *id.*, although a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570).  At this stage, Courts generally may not consider materials outside the pleadings, but they can consider "documents attached as exhibits or incorporated by reference in the complaint." *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation omitted).

In the FOIA context, the D.C. Circuit has held that "a plaintiff must plead enough facts to state a claim to relief that is plausible on its face and to nudge his claims across the line from conceivable to plausible . . . A successful FOIA claim has three elements.  The requester must establish (or, at this stage, plausibly allege) that the agency has (1) improperly (2) withheld (3) agency records." *EPIC v. IRS* (*EPIC I*), 910 F.3d 1232, 1239–40 (D.C. Cir. 2018) (citations and quotations omitted).

3

### III.     Analysis

"FOIA requires federal agencies to make records promptly available when a requester files a request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules. *See* 5 U.S.C. § 552(a)(3)(A). But an agency need not produce records that fall within one of nine exemptions . . . To withhold records, then, the agency must establish that an exemption applies and, for mixed requests, must still disclose all reasonably segregable, non-exempt portions of the requested record(s)." *EPIC I*, 910 F.3d at 1236–37 (cleaned up).

The IRS contends that EPIC has failed to state a claim because the records at issue fall within Exemption 3, "which allows an agency to withhold records 'specifically exempted from disclosure by statute' if the statute meets certain criteria." *EPIC I*, 910 F.3d at 1237 (quoting 5 U.S.C. § 552(b)(3)). The IRS invokes 26 U.S.C. § 6103(a)—which, for good reason, generally bars the disclosure of tax returns and return information—as the law that exempts these records from disclosure.[2] There is no question that § 6103(a) is a nondisclosure statute for the purposes of Exemption 3. *See id.*; *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997). And the parties appear to agree that the records sought are within the statute's ambit. But § 6103(a) itself contains thirteen limited exceptions, situations in which Congress—for whatever reasons—decided that the general disclosure bar does not apply. *See EPIC I*, 910 F.3d. at 1243. The D.C. Circuit has "described the relationship between § 6103(a) and FOIA as entirely harmonious, concluding that tax returns and return information that § 6103(a) bars from disclosure are exempt from FOIA. At the

---

[2] 26 U.S.C. § 6103(b)(2) defines "return information" to include, among other things, offers-in-compromise. 26 U.S.C. § 6103(b)(2)(D) (return information includes "any agreement under section 7121, and any similar agreement, and any background information related to such an agreement or request for such an agreement."). Section 7121 authorizes the IRS to "enter into an agreement in writing with any person relating to the liability of such person . . . for any taxable period." 26 U.S.C. § 7121.

same time, the thirteen exceptions to § 6103(a) allow the IRS to disclose certain tax records, which records, in turn, are subject to FOIA." *EPIC I*, 910 F.3d at 1237 (cleaned up).  Thus, whether EPIC has stated a claim turns on whether the records at issue are covered by any of the thirteen exceptions such that the IRS must disclose them, which would in turn subject them to EPIC's FOIA request.  EPIC relies on § 6103(k)(1), which provides that "[r]eturn information shall be disclosed to members of the general public to the extent necessary to permit inspection of any accepted offer-in-compromise under section 7122 relating to the liability for a tax imposed by this title."  26 U.S.C. § 6103(k)(1).

The IRS makes several arguments why no exception applies and thus that EPIC has failed to state a claim.  First, the IRS asserts that it may not disclose the records at issue to EPIC because EPIC lacks the taxpayer's consent, as required in § 6103(c), or a qualifying material interest as described under § 6103(e).  EPIC, of course, concedes it does not have consent or a qualifying material interest that would satisfy those two exceptions.  Still, this argument does not get the IRS very far.  As noted above, EPIC does not purport to rely on these exceptions.  And to the extent that the IRS argues that the consent and qualifying material interest requirements apply to § 6103(k)(1), *see* ECF No. 25 at 8, that argument fails as well.  There is no basis in the statute's text or structure to import these requirements into § 6103(k)(1), which, after all, permits disclosure to "members of the general public."  And the Court notes that neither the regulation that allows members of the public to inspect information relating to an offer-in compromise nor the form the public may use to request access to those records mention a consent or qualifying material interest requirement.[3]

---

[3] An IRS regulation allows the public to inspect Form 7249, titled "Offer Acceptance Report," at designated locations within one year of offer-in-compromise's execution.  *See* 26 C.F.R.

Second, the IRS homes in on § 6103(k)(1), arguing that it does not create a disclosure obligation that requires it to produce records to EPIC under FOIA. ECF No. 21-1 at 11. But once again, the IRS's argument runs headlong into the text of the statute. Section 6103(k)(1) states that return information "*shall be disclosed* to the extent necessary to permit inspection of any accepted offer-in-compromise." 26 U.S.C. § 6103(k)(1) (emphasis added). That Congress used the word "shall," rather than "may" like in other provisions under § 6103(k), is telling. The Court cannot read this language as anything but a disclosure obligation.

Seizing on another portion of the exception to support this argument, the IRS asserts that the phrase "to the extent necessary to permit inspection" gives it discretion to decide both the records it must disclose and the means necessary to disclose them. The Court agrees that phrase limits the records the IRS must disclose to those necessary to permit inspection of any accepted offer-in-compromise. But the IRS's interpretation goes further. In its view, because the Secretary of the Treasury has by regulation established Public Inspection Files and a related non-FOIA in-

---

§ 601.702(d)(8). Form 7249 contains assorted information about an offer-in-compromise including the taxpayer's name, location, state, and zip code; the number and acceptance date of the offer; the type of tax, taxable period, date assessed, and current balance for each liability settled; the total balance of liabilities settled; the balance received; the reason for the IRS's acceptance of the offer; the precise terms of the offer; the employee(s) who approved the IRS's acceptance of the offer; and the date of each such approval. *See* Sample Form 7249, Offer Acceptance Report, available at https://www.irs.gov/pub/irs-utl/f7249--2017-03-00_Sample_508.pdf (last visited December 3, 2021). To request disclosure of information about an offer-in-compromise, members of the public must submit a Form 15086 Public Inspection File request to the offer-in-compromise office in Memphis, Tennessee. *See* IRM § 5.8.8.9. Form 15086 asks a requester to "identify the Accepted Offer in Compromise (e.g. offer number, name, state) as specifically as possible." *See* Offer in Compromise Public Inspection File Request, available at https://www.irs.gov/pub/irs-pdf/f15086.pdf (last visited December 3, 2021). It also asks the requester to indicate how the requester wishes to have the records sent to them, either by mail or fax. The form asks the requester's reason for seeking the records and gives the option of "Personal – I am requesting this information for personal reasons." *Id*.

person inspection process—and determined that nothing more is "necessary" under § 6103(k)(1)—the exception does not afford EPIC any disclosure rights under FOIA. The Court disagrees.

To begin with, the Court is unconvinced that "to the extent necessary" refers to the *means* of disclosure. The statute already authorizes the Secretary to prescribe regulations about the time, place, and manner of inspections or disclosure for *all* the exceptions to the general disclosure bar. The better reading of that phrase is that it refers solely to the information necessary to permit inspection of accepted offers-in-compromise. That reading gives "effect to every clause and word" of the statute. *Marx v. General Rev. Corp.*, 568 U.S. 371, 385 (2013) (quotation omitted) (discussing canon against surplusage). In addition, because "inspection" is defined in the statute as meaning "*any* examination of a return or return information," 26 U.S.C. § 6103(b)(7) (emphasis added), that word does not suggest any limitation linked to a means of disclosure, either. At bottom, the Court can see no reason why § 6103(k)(1), or the non-FOIA in-person inspection regime established by the Secretary, operate to extinguish EPIC's right to make an otherwise valid FOIA request for records covered by the exception. *See, e.g.*, *Maxwell v. Snow*, 409 F.3d 354, 357–58 (D.C. Cir. 2005) (rejecting view that "§ 6103 [is] the *exclusive* statute governing requests for information from the IRS" and affirming that "FOIA procedures apply to § 6103 requests") (citing *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 149–150 (D.C. Cir. 1986)); *see also Goldstein v. IRS*, 174 F. Supp. 3d 38, 47 (D.D.C. 2016) (reiterating that "the IRS must defend any withholding of tax returns under the procedural and substantive rules of FOIA") (citing *Church of Scientology*, 792 F.2d at 149).

In addition, relevant case law does not support the IRS's argument that it has no disclosure obligations to EPIC under § 6103(k)(1). For example, in *Tax Analysts v. IRS*, 214 F.3d 179 (D.C. Cir. 2000), the Circuit had the occasion to consider 26 U.S.C. § 6104, another exception to the

general disclosure bar. Much like § 6103(k)(1), part of § 6104 provides that certain tax information "shall be open to public inspection." 26 U.S.C. § 6104(a)(1)(A). The court sought to determine whether documents fell within § 6104 and thus, in its words, "*must* be disclosed despite FOIA exemption 3 and . . . § 6103." 214 F.3d at 183 (emphasis added). The court noted that although § 6103 functioned as a general exception to FOIA disclosure, § 6104 acted as an "exception to the exception." *Id.* And relevant here, the Circuit held that § 6104 "specifically require[d]" disclosure under FOIA, *id.*, even though that statute set forth specific locations where public inspection of certain documents had to take place and provided the agency discretion to regulate the time and place for inspection of other documents.[4] 26 U.S.C. § 6104(a)(1)(A). By the IRS's logic, those aspects of the statute should have cast doubt on whether the plaintiffs in that case had any FOIA rights.

In contrast, in *EPIC I*, the Circuit considered whether a different exception—§ 6103(k)(3)—created a disclosure obligation under FOIA. *See* 910 F.3d at 1241–43. That exception provides that the Secretary "may, but only following approval by the Joint Committee on Taxation, disclose such return information or any other information with respect to any specific taxpayer to the extent necessary" for certain purposes. 26 U.S.C. § 6103(k)(3). There, the court determined that § 6103(k)(3) merely gave discretion to the IRS rather than imposed a "*duty* to disclose information," and therefore, that exception "afford[ed] a FOIA requester no disclosure right." *Id.* at 1242–43. The court even remarked that the § 6103(k)(3) exception "may be *sui*

---

[4] Under § 6104, certain applications and notices for tax-exempt status "shall be open to public inspection *at the national office of the Internal Revenue Service*," applications or notices filed after the date § 6104 was enacted "shall be open to public inspection at the *appropriate field office of the Internal Revenue Service*," and certain documents relating to pension and other types of accounts "shall be open to public inspection *at such times and in such places as the Secretary may prescribe*." 26 U.S.C. § 6104(a)(1)(A), (B) (emphasis added).

8

*generis*" among the exceptions on that point. *Id*. at 1243. And it contrasted that exception with § 6103(k)(1), which it noted "allow[s] the public to inspect certain return information," and mentioned the similarities between § 6103(k)(1) and § 6104. *Id.* at n.9. The discretion to disclose certain information that the Circuit recognized in *EPIC I*, well grounded in the statutory text, is nothing like the discretion that the IRS claims for itself here, where the statute commands that certain information "shall" be disclosed.[5]

For these reasons, the Court finds that § 6103(k)(1) creates a FOIA obligation for the IRS to disclose return information to EPIC, to the extent that information is necessary to permit inspection of an accepted offer-in-compromise. Thus, the IRS's argument to the contrary provides no basis to dismiss the complaint because EPIC has failed to state a claim.

There is an important caveat to this conclusion, though. The IRS is right that § 6103(k)(1), in referencing only "return information," does not authorize it to disclose a taxpayer's returns, which EPIC included in its requests. Congress defined the two terms differently and did not include a taxpayer's "return" in the definition of "return information." 26 U.S.C. § 6103(b)(2). Indeed, where "return" is mentioned in definition of "return information," it is used only to refer to information about a return, rather than the return itself. *See* 26 U.S.C. § 6103(b)(2)(A) (return

---

[5] Though not controlling, the Court notes that the IRS's practice also reflects an understanding that § 6103(k)(1) information can be accessed through FOIA requests, even if the IRS argues that EPIC may not do so. Both IRS regulations and the IRS Manual direct those seeking information on an offer-in-compromise older than a year to use the IRS's FOIA procedures. *See* 26 C.F.R. § 601.702(d)(8); IRM 11.3.11.8(5). Of course, the Manual does not have the "force and effect of law," *Marks v. Comm'r*, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991), and its provisions "are merely guidance, *i.e.*, 'directory rather than mandatory,'" *Colacurcio v. Comm'r*, 727 Fed. App'x 705, 707 (D.C. Cir. 2018) (quoting *Marks*, 947 F.2d at 986 n.1). Still, the Manual is useful to illustrate how the IRS provides access to 6103(k)(1) information. *Cf. Inst. for Justice v. IRS*, 941 F.3d 567, 569, 573 (D.C. Cir. 2019) (reversing grant of summary judgment where IRS Manual contradicted legal denial before the Circuit).

information includes "any other data . . . collected by the Secretary *with respect* to a return.") (emphasis added).  Thus, EPIC fails to state a claim to obtain tax returns because § 6103(k)(1) does not require—or even authorize—the IRS to disclose tax returns, which remain subject to § 6103(a)'s disclosure bar.  EPIC has only stated a claim for "return information," as referenced in § 6103(k)(1) and defined in § 6103(b)(2), and only to the extent that return information is necessary to permit inspection of an accepted offer-in-compromise.

Finally, the IRS argues that to the extent EPIC seeks records at issue in *EPIC I*, its claim is barred by res judicata.[6]  ECF No. 21-1 at 2 n.1.  Not so.  The "doctrine of *res judicata* holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies on the same cause of action." *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004).  "Whether two cases implicate the same cause of action turns on whether they share the same nucleus of facts." *Id.* (quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002)) (internal quotation omitted).  In the FOIA context, the Circuit has reasoned that two suits involve the same nucleus of facts when they seek the same documents.  *See Negley v. FBI*, 169 Fed. App'x 591, 593–94 (D.C. Cir. 2006).  That is not the case here.  *EPIC I* involved a FOIA request seeking the former President's "tax returns for tax years 2010 forward, and any other indications of financial relations with the Russian government or Russian business."  910 F.3d at 1235.  This case arises from a different FOIA request, invoking a different FOIA provision, seeking return information relating to any accepted offers-in-compromise by the former President and his associated businesses.  The IRS, which bears the burden of establishing res judicata, has not shown that the return information EPIC now seeks

---

[6] The IRS also makes a one-sentence argument that issue preclusion applies.  *See* ECF No. 21-1 at 2 n.1.  That argument is waived.  *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.").

was at issue in *EPIC I*. *Cf. Roman v. Nat'l Reconnaissance Office*, 952 F. Supp. 2d 159, 164 (D.D.C. 2013) (res judicata applied when previous lawsuit concerned a FOIA request for "identical" documents). The only overlap that clearly *does* exist relates to EPIC's request for tax returns. But for reasons explained above, EPIC has not stated a claim for tax returns.

## IV.  Conclusion

For all the above reasons, the Court will grant the IRS's Motion to Dismiss, ECF No. 21, to the extent the complaint asserts a claim for disclosure of tax returns, or any records other than return information necessary to permit inspection of any accepted offer-in-compromise. In all other respects, the Court will deny the motion. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: December 3, 2021